IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BERNARD KEVIN CAMPBELL,      \*

     Plaintiff,              \*

v.                              \*      Civil Action No. GLR-24-2042

YESCARE CORP., et al.,        \*

     Defendants.         \*

                             \*

\*\*\*

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendants Robert S. Dean, Jr.[1] and the Maryland Department of Public Safety and Correctional Services' ("DPSCS") (collectively, "Correctional Defendants") Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 55); Defendant MHM Services, Inc. d/b/a Centurion Group, Inc.'s ("Centurion Group") Motion to Dismiss as Improper Party or, in the Alternative, Motion for Summary Judgment (ECF No. 57); and Plaintiff Bernard Kevin Campbell's Motions to Strike (ECF Nos. 61, 63, 85). The Motions are ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant in part and deny in part Correctional Defendants' Motion to

---

[1] Defendants note that former warden Robert S. Dean, Jr. was "improperly identified as Robert S. Deon" by self-represented Plaintiff Bernard Kevin Campbell. (Correctional Defs.' Mot. Dismiss or, Alt. Mot. Summ. J. ["Mot. Dismiss"] at 1 n.1, ECF No. 55; <u>see also</u> Pl.'s Opp'n Correctional Defs.' Mot. Dismiss at 7, ECF No. 62) The Clerk will be directed to change the former warden's name consistent with this correction on the docket.

Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 55); deny Centurion Group's Motion to Dismiss as Improper Party or, in the Alternative, Motion for Summary Judgment (ECF No. 57); and deny as moot Campbell's Motions to Strike (ECF Nos. 61, 63, 85).

## I.    BACKGROUND[2]

### A.    <u>Factual Background</u>

This action arises out of alleged violations of Plaintiff Bernard Kevin Campbell's constitutional right to receive adequate medical care at the Jessup Correctional Institution ("JCI"). (2d Am. Compl. ¶ 1, ECF No. 35-1).[3] Campbell is an incarcerated individual at JCI who suffers from Charcot-Marie-Tooth disease ("CMT").[4] (<u>Id.</u> ¶ 2). Defendant Maryland Department of Public Safety and Correctional Services ("DPSCS") operates Maryland's state correctional facilities, including JCI. (<u>Id.</u> ¶ 12). Defendant YesCare Corporation ("YesCare") is a Tennessee-based company that provided medical services to incarcerated persons at JCI through DPSCS until July 31, 2024. (<u>Id.</u> ¶ 10). In August of

---

[2] Unless otherwise noted, the Court takes the following facts from Campbell's Second Amended Complaint, (ECF No. 35-1), and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

[3] Campbell initially filed his Complaint, Amended Complaint, and Motion for Preliminary Injunction as a self-represented litigant (ECF Nos 1, 7, 9) but the Court appointed counsel in this case on August 22, 2024 (Aug. 22, 2024 Order, ECF No. 12; Sept. 25, 2024 Order, ECF No. 17).

[4] This disease is a painful and chronic condition affecting the nervous system. Nat'l Inst. of Neurological Disorders and Stroke, Charcot-Marie-Tooth Disease, https://www.ninds.nih.gov/health-information/disorders/charcot-marie-tooth-disease (last visited Nov. 19, 2025). It "lead[s] to muscle weakness and degeneration in the hands, arms, legs, and feet, as well as dulled senses of touch and impaired movement." (2d Am. Compl. ¶ 2, ECF No. 35-1).

2024, DPSCS allegedly contracted with Defendant MHM Services, Inc. d/b/a Centurion Group, Inc. ("Centurion Group"), a privately-owned company with its principal place of business in Virginia, to provide medical services at JCI. (Id. ¶ 11). (YesCare and Centurion Group are referred to throughout as "Healthcare Defendants.") At the time of the events alleged in this Complaint, Defendant Robert S. Dean, Jr. was the Warden at JCI, where he was responsible for supervising and overseeing staff. (See id. ¶ 13; Correctional Defs.' Mem. Supp. Mot. Dismiss, or Alt., Mot. Summ. J. ["Correctional Defs.' Mot."] at 3, ECF No. 55-1).

In 2010, Campbell was diagnosed with CMT while incarcerated at JCI. (2d Am. Compl. ¶ 20). As a result of this disease, he has trouble walking and moving his limbs, decreased nerve function, muscle degeneration, and a loss of sensory feeling. (Id. ¶ 22). According to Campbell, these symptoms often cause him to trip and fall, and experience significant pain while walking. (Id. ¶ 2). To counteract these symptoms, medical professionals employed through DPSCS directed Campbell "to use orthotic leg braces to support his movement." (Id. ¶ 3). These braces are referred to as Ankle Foot Orthoses ("AFOs")." (Id.).[5] Specifically, Campbell alleges that certain providers prescribed custom-fit leg braces as treatment. (Id. ¶ 36).

---

[5] AFOs are "designed to provide support and proper alignment of the foot and ankle, assisting in instances of muscle weakness and helping protect the foot and leg." (2d Am. Compl. ¶ 26) (quoting Hanger Clinic, Ankle Foot Orthoses, https://hangerclinic.com/orthotics/ankle-foot/ankle-foot-orthoses/ (last visited Nov. 19, 2025)).

According to Campbell, AFOs must be custom-fit to be effective. (Id. ¶ 4). But to save costs, Campbell alleges that, on August 15, 2019, he received generic, off-the-shelf AFOs that improperly fit his legs and did not support his movement. (Id. ¶¶ 5–7). Campbell asserts that these leg braces caused him to fall on numerous occasions and experience significant pain. (Id. ¶ 49).

Campbell alleges that over the course of several years, he made numerous requests for customized AFOs, to no avail. (Id. ¶ 30). As a result, on November 5, 2022, Campbell asserts that he filed an Administrative Remedy Procedure ("ARP") Request with former warden, Dean, Jr., seeking his assistance in obtaining proper leg braces. (Id. ¶ 31). As Campbell explains, the ARP is the process by which an inmate may file a grievance or a complaint if he believes that he has been denied proper medical care. (Id. ¶ 32). An ARP request (or complaint) is then reviewed and ruled on by the warden and their staff. (Id.). If the ARP is denied, "the incarcerated person may file an appeal with the Inmate Grievance Office to overturn the warden's determination." (Id.). Through his ARP complaint, Campbell asserts that he made Dean, Jr. aware of "[his] medical need for properly fitted AFOs and the private healthcare providers' refusal to timely provide the same." (Id. ¶ 33).

On April 7, 2023, the former warden allegedly denied Campbell's ARP request, noting that the Health Service Administrator "had viewed and assessed" his leg brace and found that his AFOs "were still effective." (Id. ¶ 36). Campbell appealed this decision with the Commissioner of Corrections on December 22, 2023. (Id. ¶ 37). The appeal was granted in part and denied in part. (Id.). Afterwards, Campbell, received "off-the-shelf AFOs" instead of the custom-fit leg braces as recommended. (Id. ¶ 38).

From June 2023 through March 2024, Campbell alleges that he met with JCI and YesCare providers to discuss his chronic pain and request properly fitting leg braces and straps. (Id. ¶ 39). On May 1, 2024, he filed another ARP request for custom leg braces, this time informing the former warden that the generic leg braces caused him to fall and experience significant pain, and that the straps had not been replaced as requested. (Id. ¶ 40). On June 18, 2024, Dean, Jr. denied his request for custom-fit braces, allegedly disregarding Campbell's medically prescribed treatment and ongoing pain. (Id. ¶¶ 40, 58). According to Campbell, it was only after filing two lawsuits that he received a new pair of leg braces on or around October 16, 2024. (Id. ¶ 53). Campbell maintains, however, that these generic AFOs are not the leg braces he was prescribed, explaining that they "cut and bruise [his] legs, causing wounds which have not healed appropriately and may lead to permanent scarring." (Id. ¶ 7, 53).

As to the healthcare providers, Campbell contends that numerous YesCare and Centurion Group employees entered requests for properly fitting leg braces "and/or replacement straps and padding necessary to treat his CMT." (Id. ¶¶ 43, 46). Yet, according to Campbell, Healthcare Defendants unreasonably delayed and denied these requests, even though they were submitted by Healthcare Defendants' own medical staff. (Id.). To date, Campbell contends that he has not received properly fitting AFOs. (Id. ¶ 46).

Campbell attributes Healthcare Defendants' failure to provide him with proper medical care "to the policies, patterns, practices, and customs of" YesCare and Centurion Group. (Id. ¶ 82). Campbell asserts that Healthcare Defendants' contract with the State of Maryland, through DPSCS, was based on a compensation model in which Centurion Group

and YesCare were "provided a set amount of money per inmate" to cover their medical costs. (Id. ¶ 59). Because of this model, Campbell alleges that Healthcare Defendants are incentivized to retain excess funds not spent as profit and "have adopted specific policies and procedures designed to grow profits at the expense of rendering adequate health care to inmates." (Id. ¶¶ 60–61). For example, Campbell asserts that Healthcare Defendants "instituted a policy requiring time consuming approval processes" each time an inmate requires a referral or specialized care that may result in increased costs—a policy that "applies even in situations where such care is imminently necessary[,]as in Campbell's case." (Id. ¶ 62).

Through this policy, Campbell alleges that Healthcare Defendants "have establish[ed] patterns and practices of:" (1) failing to timely address and properly escalate medical requests for specialized care or outside referrals, especially where such requests involve increased costs, (id.¶ ¶ 63, 65); (2) "under classifying the severity of health conditions and symptoms presented by inmates," (id. ¶ 64); and (3) "providing deficient medical care in violation of their statutory, contractual, and ethical obligations," (id. ¶ 66).

Finally, Campbell alleges that DPSCS owed him a duty to ensure that he received "proper medical care while residing at JCI." (Id. ¶ 87). Campbell asserts that DPSCS knew that "[he] was not receiving proper medical care and treatment through his numerous grievances and complaints, as well as the several lawsuits filed against Healthcare Defendants regarding the same." (Id. ¶ 88). Yet, DPSCS continued to contract with Healthcare Defendants, which, in Campbell's view, amounts to gross negligence towards

Campbell's well-being resulting in new injuries and the exacerbation of previously existing injuries. (Id. ¶ 89, 90).

## B.    <u>Procedural History</u>

On July 12, 2024, Campbell initiated this action against Defendant YesCare. (ECF No. 1). Campbell amended his Complaint on August 7, 2024, adding Defendants Maryland Department of Public Safety and Correctional Services ("DPSCS"), JCI, Robert S. Dean, Jr. (Former Warden), and Damean Stewart (Assistant Warden). (ECF No. 7). On August 7, 2024, Campbell filed a Motion for Preliminary Injunction, (ECF No. 9), and a Motion to Appoint Counsel, (ECF No. 8). The Court granted Campbell's Motion to Appoint Counsel on August 22, 2024 (ECF No. 12) and denied his Motion for Preliminary Injunction on November 14, 2024 (ECF No. 33).

Campbell filed a Second Amended Complaint on December 2, 2024, in which he removed JCI and Damean Stewart as Defendants and added Centurion Group. (2d Am. Compl. at 1). Campbell asserts that former warden Dean, Jr., YesCare, and Centurion Group violated his Eighth Amendment right to medical care under 42 U.S.C. § 1983 (Counts I–II) and that DPSCS violated the Maryland Declaration of Rights Articles 16 and 25 (Count III). (Id. at 20–23). Campbell seeks compensatory, punitive, and exemplary damages; declaratory, injunctive, and equitable relief; and an award of reasonable attorneys' fees and costs associated with this litigation. (Id. at 25).

YesCare answered the Second Amended Complaint on January 14, 2025. (ECF No. 41). On February 17, 2025, the parties filed a Joint Stipulation and Proposed Briefing Schedule (ECF No. 46), which the Court granted on February 18, 2025 (ECF No. 47). On

April 7, 2025, Correctional Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 55). Centurion Group filed a Motion to Dismiss as Improper Party or, in the Alternative, Motion for Summary Judgment on April 10, 2025. (ECF No. 57). On May 12, 2025, Campbell filed Oppositions to Correctional Defendants and Centurion Group's Motions. (ECF Nos. 60, 62). Correctional Defendants and Centurion filed Replies in support of their Motions on June 16, 2025. (ECF Nos. 75 & 76). On June 30, 2025, Campbell filed a Motion for Leave to file a Surreply in response to Correctional Defendants' Reply (ECF No. 81), which the Court granted on October 3, 2025 (ECF No. 89).

Campbell also filed Motions to strike certain documentation submitted in support of Correctional Defendants and Centurion Group's Motions on May 12, 2025. (ECF Nos. 61, 63). On June 16, 2025, Centurion Group and Correctional Defendants filed their Oppositions to Campbell's Motions to strike (ECF Nos. 72 & 73) and Campbell replied on July 9, 2025 (ECF Nos. 83 & 84). That same day, Campbell also filed a Motion to strike documentation submitted in support of Correctional Defendants' Reply brief (ECF No. 85). Correctional Defendants filed an Opposition to Campbell's Motion to strike on July 23, 2025 (ECF No. 87) and on August 6, 2025, Campbell filed his Reply (ECF No. 88).

## II.    DISCUSSION

### A.    <u>Conversion</u>

Correctional Defendants and Centurion Group style their Motions as Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the Alternative, for Summary Judgment under Federal Rule of Civil Procedure 56. (ECF Nos. 55 & 57). A motion styled

in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd sub nom, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court has "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: (1) notice; and (2) a reasonable opportunity for discovery. Greater Balt. Ctr. For Pregnancy Concerns, Inc. v. Mayor and City Council of Balt., 721 F.3d 264, 281 (4th Cir. 2013).

When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus.,

Inc., 637 F.3d 435, 448–49 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To sufficiently raise the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

"The Fourth Circuit places 'great weight' on the affidavit requirement." Nautilus Ins. Co. v. REMAC Am., Inc., 956 F.Supp.2d 674, 683 (D.Md. 2013) (quoting Evans, 80 F.3d at 961). However, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary." Harrods, 302 F.3d at 244. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." Id. at 247 (quoting 10B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998) (internal quotation marks omitted)).

Here, the Court finds that the second requirement for conversion, a reasonable opportunity for discovery, is not satisfied as to Defendants' Motions. While Correctional Defendants and Centurion Group did place Campbell on notice that the Court might resolve their Motions under Rule 56 by styling the Motions in the alternative for summary

judgment, (see generally, Correctional Defs.' Mot. Dismiss or, in the Alternative, Mot. Summ. J., ECF No. 55; Centurion Group's Mot. Dismiss as Improper Party or, in the Alternative, Mot. Summ. J., ECF No. 57), and submitting materials outside the pleadings for the Court's consideration, (see ECF Nos. 55-2 through 55-8; ECF No. 57-1), Campbell filed Rule 56(d) declarations in which he informed the Court that he has not yet had an opportunity to conduct discovery in this action (Thompson Decl. ¶¶ 12–14, ECF No. 60-1; Thompson Decl. II ¶¶ 5–7, ECF No. 62-1). As such, the Court finds the second conversion requirement unmet and will decline to convert Defendants' Motions into motions for summary judgment. See Carey v. Throwe, No. GLR-18-162, 2019 WL 414873, at *3 (D.Md. Jan. 31, 2019), aff'd, 957 F.3d 468 (4th Cir. 2020) (declining to convert defendants' motion to one for summary judgment when plaintiff filed Rule 56(d) affidavit requesting discovery). Accordingly, the Court will construe Defendants' Motions (ECF Nos. 55, 57) as motions to dismiss and will not consider materials outside of the pleadings submitted by Correctional Defendants and Centurion Group.

## B.    <u>Motions to Strike</u>

Before turning to the merits of Defendants' Motions to Dismiss, the Court will address Campbell's Motions to Strike (ECF Nos. 61, 63, 85). Campbell filed three Motions to strike the following documentation submitted in support of Correctional Defendants' and Centurion Group's Motions to Dismiss: (1) Declarations from Robert S. Dean, Jr. (ECF Nos. 55-3, 75-2) and Deana Johnson (ECF No. 57-1); (2) JCI's Administrative Remedy Response ("ARP") records (ECF No. 55-4); (3) Campbell's medical records (ECF No. 29-2); and (4) the prior record in Campbell I, GLR-22-1893 and Campbell II, GLR-23-2021.

(Campbell's Mem. Supp. Mot. Strike ["Mot. Strike"] at 2, ECF No. 63-1; Campbell's Mem. Supp. Mot. Strike Defendant Dean's Supp. Decl. ["Mot. Strike II"] at 2, ECF No. 85-1; Campbell's Mem. Supp. Mot. Strike Deana Johnson's Decl. ["Mot. Strike III"] at 2, ECF No. 61-1). Because the Court did not consider these documents in its analysis of Defendants' Motions (ECF Nos. 55, 57), Campbell's Motions to Strike (ECF Nos. 61, 63, 85) will be denied as moot.[6] See Glass v. Anne Arundel Cnty., 38 F.Supp.3d 705, 712–13 (D.Md. 2014), aff'd, 716 F.App'x 179 (4th Cir. 2018) (denying as moot plaintiff's motion to strike an affidavit because the court did not rely on the affidavit in resolving the underlying motion).

## C.   **Motions to Dismiss**

### 1.  **Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible

---

[6] As will be discussed later, the Court will take judicial notice of Campbell's prior proceedings before this Court in Campbell I, GLR-22-1893 and Campbell II, GLR-23-2021, within the context of Correctional Defendants' res judicata argument. When considering a motion to dismiss based on the defense of res judicata, the Court may take judicial notice of facts from a prior judicial proceeding so long as the res judicata defense raises no disputed issues of fact. Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000). Because Campbell does not dispute the factual accuracy of the prior records, the Court will properly take judicial notice of those proceedings. Id.

on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom, Goss v. Bank of Am., Na., 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., NC., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, see United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979) (finding dismissal of complaint proper because plaintiffs' "conclusory allegations" of discrimination were unsupported by "reference to particular acts, practices, or policies"), or legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

## 2. Analysis

Campbell asserts three counts in his Second Amended Complaint. Count I alleges an Eighth Amendment right to medical care claim under 42 U.S.C. § 1983 against Dean, Jr., Count II alleges the same claim against Healthcare Defendants, and Count III alleges a Maryland Declaration of Rights violation against DPSCS. (2d Am. Compl. at 20–23). As discussed more fully below, Count I will proceed in part and be dismissed in part, Count II will proceed, and Count III will be dismissed.

### i.    Count I: Eighth Amendment Right to Medical Care under 42 U.S.C. § 1983 against Dean, Jr.

In Count I of Campbell's Second Amended Complaint, he alleges that Defendant Dean, Jr. violated his Eighth Amendment right to medical care by denying his ARP requests for custom-fit leg braces. (2d Am. Compl. ¶¶ 68–84). Campbell appears to seek monetary damages and declaratory relief for this claim. (Id. at 25). Correctional Defendants move to dismiss Count I on several grounds, including that: (1) Dean, Jr. is entitled to absolute quasi-judicial immunity;[7] (2) Campbell fails to state a claim under Section 1983;

---

[7] The Court acknowledges that Correctional Defendants first raised the defense of absolute quasi-judicial immunity in their Reply. (Correctional Defs.' Reply Supp. Mot. Dismiss, or in the Alternative, Mot. Summ. J. ["Correctional Defs. Reply"] at 22, ECF No. 75). Ordinarily, "arguments raised for the first time in a reply brief or memorandum will not be considered." Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC, 708 F.Supp.2d 527, 535 (D.Md. 2010). However, because Campbell filed a surreply addressing this defense, (ECF No. 81-1; see also Order granting surreply at 1, ECF No. 89), and the Fourth Circuit has repeatedly expressed a strong policy that cases be decided on the merits, United States v. Shaffer Equip. Co., 11 F.3d 450, 453 (4th Cir. 1993), this Court will consider the issue of absolute quasi-judicial immunity in resolving Correctional Defendants' Motion to Dismiss. See, e.g., Clawson v. FedEx Ground Package Sys., Inc., 451 F.Supp.2d 731, 734–35 (D.Md. 2006) (considering an argument raised for the first time in a reply brief because the opponent had filed a surreply on the issue).

(3) Campbell fails to allege a violation of his Eighth Amendment right; and (4) the claims against Dean, Jr. are barred under res judicata and collateral estoppel. (Correctional Defs.' Mot. at 16, 18, 21, 25, 31; Correctional Defs.' Reply Supp. Mot. Dismiss, or in the Alternative, Mot. Summ. J. ["Correctional Defs.' Reply"] at 15, 22, ECF No. 75). At bottom, the Court finds that Dean, Jr. is entitled to quasi-judicial immunity to the extent Campbell seeks damages in Count I. To the extent Campbell seeks declaratory relief in Count I, this claim shall proceed.

a.    Absolute Quasi-Judicial Immunity

As a threshold matter, the Court begins by addressing Correctional Defendants' immunity defenses. Correctional Defendants contend that Dean, Jr. is entitled to absolute quasi-judicial immunity for decisions rendered with respect to Campbell's ARP request.[8] (Correctional Defs.' Reply at 22). The Court agrees.

"[A]bsolute quasi-judicial immunity 'extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune.'" Williams v. Hanlon, No. RDB-19-550, 2019 WL 1597320, at *4 (D.Md. Apr. 15, 2019) (quoting Bush v. Rauch, 38 F.3d 842, 847 (6th Cir.

---

[8] Correctional Defendants also argue that Dean, Jr. is entitled to Eleventh Amendment and qualified immunity as to Count I. (Correctional Defs.' Mem. Supp. Mot. Dismiss, or in the Alternative, Mot. Summ. J. at 16, 31, ECF No. 55-1). Because the Court finds that absolute quasi-judicial immunity bars Count I to the extent Campbell seeks monetary damages, it need not reach these arguments. Further, neither Eleventh Amendment immunity nor qualified immunity operate as a bar to Campbell's request for declaratory relief. (2d Am. Compl. at 25; see Lynn v. West, 134 F.3d 582, 588 (4th Cir. 1998) ("The Eleventh Amendment . . . does not bar . . .claims for declaratory and injunctive relief."); Mobley v. Mallow, No. CCB-18-3515, 2019 WL 6217881, at *4 (D.Md. Nov. 21, 2019) (qualified immunity does not apply to claims for declaratory relief).

1994)). Such immunity shields a quasi-judicial officer from claims for damages in both their official and individual capacities. See Ash v. Russell, No. CCE-23-2873, 2024 WL 3597184, at *5 (D.Md. July 31, 2024). Within the prison context, courts have generally found that prison staff who review formal inmate grievances, such as the ARP requests at issue here, "act in a quasi-judicial capacity" and are thus immune from damages associated with these responsibilities. French v. Allegany Cnty., No. CCB-11-2600, 2013 WL 4049682, at *3 (D.Md. Aug. 8, 2013) (finding that the administrative staff who review inmate grievances submitted through the ARP process act in a quasi-judicial capacity); see, e.g., Burt v. Mitchell, 589 F.Supp. 186, 192 (E.D.Va. 1984), aff'd, 790 F.2d 83 (4th Cir. 1986) (finding that warden who participated in inmate grievance procedure was afforded absolute immunity from civil suit for damages related to his rulings in the ARP process); Craig v. Thompson, No. 7:23CV00656, 2025 WL 2778858, at *8 (W.D.Va. Sept. 29, 2025) (noting that a prison official who denies an inmate grievance is afforded quasi-judicial immunity).

To be sure, this Court "recognizes that the privilege of absolute [quasi-judicial] immunity should be applied sparingly in suits brought under [S]ection 1983." Fitchette v. Collins, 402 F.Supp. 147, 154 (D.Md. 1975). At the same time, the Court "is compelled to conclude that the absence of such immunity is likely to unduly inhibit . . . warden[s] in the performance of their quasi-judicial functions by the threat of liability for tortious conduct." Id.

With these principles in mind, the Court finds that Dean, Jr. is entitled to absolute quasi-judicial immunity for his decision-making role in Campbell's grievance process.

Because Campbell's allegations against Dean, Jr. boil down to disagreements with his rulings on Campbell's ARP requests, (2d. Am. Compl. ¶¶ 36, 40), rulings that required Dean, Jr. to exercise judicial or quasi-judicial discretion, this Court will dismiss Count I to the extent Campbell seeks monetary damages. (See 2d Am. Compl. at 25); McQune v. Hutto, No. CV 2:17-1747-RMG, 2017 WL 3868796, at *2 (D.S.C. Sept. 5, 2017) (citing Pulliam v. Allen, 466 U.S. 522, 540–42 (1984)) ("[A]bsolute [quasi-judicial] immunity does not extend to actions for declaratory or injunctive relief"). To the extent Campbell seeks declaratory relief against Dean, Jr. in Count I, the Court will consider Correctional Defendants' remaining arguments in the sections that follow.

b.    Failure to state a claim under 42 U.S.C. § 1983

Correctional Defendants argue that Campbell fails to state a Section 1983 claim against Dean, Jr. because Campbell does not allege that Dean, Jr. had any personal involvement in the provision of Campbell's medical care. (Correctional Defs.' Mot. at 22). The Court finds this argument insufficient to warrant dismissal of Campbell's Section 1983 claim.

As this Court explained in Howe v. Wexford Health Sources Inc., a government official like Dean, Jr. is liable for violations under 42 U.S.C. § 1983 if he participated in some way with the alleged constitutional violation. No. GLR-24-0653, 2024 WL 4825784, at *3 (D.Md. Nov. 19, 2024). In other words, to survive a motion to dismiss, Campbell must provide the Court with enough facts to explain how Dean, Jr. was involved in the alleged deprivation of his Eighth Amendment right to medical care. Wilkerson v. Eplett, No. 24-CV-791-JPS, 2024 WL 4286137, at *3 (E.D.Wis. Sept. 25, 2024) (explaining that

17

Section 1983 claim requires plaintiff to allege "how each defendant was involved in the alleged constitutional violation"). "Plaintiff's complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights." Id. (cleaned up).

Here, Campbell's Second Amended Complaint provides this Court and Dean, Jr. with sufficient notice. Campbell asserts that he filed an Administrative Remedy Procedure Request with Dean, Jr., in which he made the former warden aware of his serious medical need for properly fitting AFOs. (2d Am. Comp. ¶¶ 5, 31). Through this request, Campbell allegedly informed Dean, Jr. that he was prescribed custom-fitted AFOs and that certain healthcare providers refused to accommodate this recommendation. (Id. ¶¶ 33, 36). Ordinarily, a warden's "processing of an ARP, without more, is insufficient to impose liability." Fuller v. Corizon, Inc., No. PWG-19-1705, 2020 WL 607011, at *13 (D.Md. Feb. 7, 2020). In this case, however, Campbell asserts that through the ARP process he made Dean, Jr. personally aware of his medical needs and the healthcare staff's failure to accommodate those needs. (Id. ¶ 5). He further alleges that despite Dean, Jr.'s knowledge of such concerns, the former warden denied his ARP request, thereby failing to ensure that Campbell received the requisite treatment. (Id.). These facts are sufficient to put Defendants and the Court on notice as to the conduct that allegedly violated Campbell's rights. See Wilkerson, 2024 WL 4286137, at *3 (explaining that Section 1983 claim only "need[s] to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate [plaintiff's] rights"). Accepting Campbell's

allegations as true, which this Court must, the Court concludes that dismissal for lack of alleged personal involvement is not proper at this stage of the litigation. See, e.g., Langley v. Arresting Officer, No. CV 3:17-3520, 2018 WL 4560208, at *2 (S.D.W.Va. Sept. 21, 2018) (finding that plaintiff's Section 1983 claim against defendant warden survived a motion to dismiss because plaintiff alleged that she made warden personally aware of plaintiff's serious medical needs through the grievances she filed); Perdue v. Streeval, No. 7:21CV00240, 2022 WL 4082484, at *2 (W.D.Va. Sept. 6, 2022) (finding dismissal of Bivens claim against warden for lack of alleged personal involvement improper when plaintiff alleged that "he made the warden aware of the surgery recommendation and staff's failure to provide that recommended treatment . . . but the [w]arden took no action to ensure access to that recommended care.") (noting that Bivens claim is analogous to Section 1983 claim and applying same standard of review).

### c.    Failure to state an Eighth Amendment claim

Correctional Defendants further argue that Count I fails as to Dean, Jr. because Campbell does not allege sufficient facts to suggest that his Eighth Amendment right to medical care was violated. (See Correctional Defs.' Mot. at 25; Correctional Defs. Reply at 10). The Court disagrees.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976); see Estelle v. Gamble, 429 U.S. 97, 103 (1976); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016); King v. Rubenstein, 825 F.3d 206, 219 (4th Cir. 2016). To state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff

must allege facts sufficient to demonstrate that defendants' acts or omissions were done with <u>deliberate indifference</u> to a <u>serious medical need</u>. <u>See</u> <u>Estelle</u>, 429 U.S. at 106 (emphasis added); <u>see also</u> <u>Anderson v. Kingsley</u>, 877 F.3d 539, 543 (4th Cir. 2017).

Courts generally require plaintiffs to first satisfy the "serious medical need" prong, by "illustrating a serious medical condition." <u>McCardell v. Joubert</u>, No. DKC-12-2558, 2012 WL 6681999, at *2 (D.Md. Dec. 21, 2012). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" <u>Heyer v. United States Bureau of Prisons</u>, 849 F.3d 202, 210 (4th Cir. 2017) (quoting <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008)); <u>see also</u> <u>Scinto</u>, 841 F.3d at 228–29 (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

The deliberate indifference prong, on the other hand, requires a plaintiff to allege facts sufficient to show "something more than mere negligence . . . [but] something less than" purposeful acts or omissions intending to cause harm or "with the knowledge that harm will result." <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994). Put another way, "deliberate indifference [lies] somewhere between the poles of negligence . . . and purpose or knowledge," and is often equated with recklessness. <u>Id.</u> at 836. To adequately allege this prong, the Fourth Circuit instructs that a plaintiff must show that prison officials were aware that their actions or inaction would cause a substantial risk of harm to plaintiff. <u>Williams v. Branker</u>, 462 F. App'x 348, 354 (4th Cir. 2012) ("[G]eneral knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the

inference between those general facts and the specific risk of harm confronting the inmate." (quoting <u>Johnson v. Quinones</u>, 145 F.3d 164, 168 (4th Cir. 1998))).

Here, the Court finds that Campbell has adequately alleged both prongs of his Eighth Amendment claim at this stage. As to the first prong, there is no dispute that Campbell suffers from CMT—a chronic, degenerative, and incurable disease that causes Campbell "difficulty walking and moving his legs, feet, and hands." (2d Am. Compl. ¶¶ 2, 2022; Correctional Defs.' Reply at 12). Because such a disease is "so obvious even a lay person would easily recognize the necessity for a doctor's attention," the Court finds Campbell's condition sufficient to meet the first element. <u>Iko</u>, 535 F.3d at 241.

Further, the Court finds that Campbell sufficiently alleges that Dean, Jr. was deliberately indifferent to his serious medical needs. Campbell asserts that because of his degenerative condition, specifically "significant signs of atrophy of the muscles in both his legs," (2d. Am. Compl. ¶ 23), he was prescribed custom-fitted leg braces, among other things, to assist him in walking (<u>Id.</u> ¶¶ 25–27, 36). Yet, Campbell received generic leg braces that did not fit and as a result, the braces cut into his legs, causing tremendous pain and bruising. (<u>Id.</u> ¶¶ 31, 55–57, 72, 76). Campbell further asserts that he informed the former warden, through the ARP process, of his need for custom-fitted leg braces and the pain that the poorly fitting braces caused him. (<u>Id.</u> ¶¶ 3334, 40, 71). Campbell alleges that despite Dean, Jr.'s awareness of the harm caused by the generic braces (e.g., ongoing pain, constant falling), he denied Campbell's ARP requests for properly fitting braces, disregarding the fact that healthcare providers recommended such treatment. (<u>Id.</u> ¶¶ 38, 40, 58). Through these actions, Campbell alleges that Dean, Jr. prolonged his pain and

suffering. (Id.). Taken as true, these allegations suggest that Dean, Jr. knew that his refusal to provide properly fitting leg braces would cause a substantial risk of harm to Campbell. See Williams v. Branker, 462 F.App'x at 354. While subsequently developed facts might lead this Court to conclude that Dean, Jr. was not aware of any specific risks of harm to Campbell, at this stage, the Court finds that Campbell has sufficiently alleged a plausible Eighth Amendment right to medical care claim.

d.    <u>Res Judicata</u> &amp; Collateral Estoppel

Finally, Correctional Defendants assert that <u>res judicata</u> and collateral estoppel bar Count I against Dean, Jr. under <u>Campbell v. Corizon Healthcare</u>, No. GLR-22-1893 ("Campbell I")[9] and <u>Campbell v. Temesgen et al.</u>, No. GLR-23-2021 ("Campbell II"). (Correctional Defs.' Mot. at 5–6, 18). Campbell contends that Dean, Jr. is not entitled to <u>res judicata</u> and that Defendants fail to properly support their collateral estoppel defense. (Pl.'s Mem. L. Opp'n Correctional Defs.' Mot. ["Pl.'s Opp'n"] at 19, 22, ECF No. 62). The Court may take judicial notice of facts from a prior judicial proceeding when the <u>res judicata</u> defense raises no disputed issues of fact. <u>Andrews v. Daw</u>, 201 F.3d 521, 524 n.1 (4th Cir. 2000). Because Campbell "does not dispute the factual accuracy of the record of [his] previous action[s]" in <u>Campbell I and II</u>, "the Court may properly take judicial notice of these prior actions." <u>Kotsias v. LaVie Care Centers, LLC</u>, No. 1:16-CV-00339-MR-DLH, 2018 WL 2016313, at *3 (W.D.N.C. Apr. 30, 2018) (citing <u>Andrews</u>, 201 F.3d at

---

[9] Formerly titled <u>Campbell v. Warden, et al.</u>

524). In so doing, the Court agrees with Campbell, finding that neither defense applies to Count I.

Res judicata, or claim preclusion, is an affirmative defense that may only be raised under Rule 12(b)(6) when it appears clearly on the face of the complaint. Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir.1993). Here, the Second Amended Complaint cites two prior lawsuits that Campbell filed before receiving his new leg braces; thus, the Court finds that the consideration of res judicata is appropriate at this stage. (2d Am. Compl. at 15–16).

The doctrine provides that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147, 153 (1979); see SAS Inst., Inc. v. World Programming Ltd., 874 F.3d 370, 378 (4th Cir. 2017). In essence, res judicata "asks whether the party has previously had a fair shot with respect to the claims raised in the present action." Jerry v. Allstate Ins. Co., 553 F.Supp.3d 287, 292 (D.Md. 2021) (internal quotation marks omitted). This affirmative defense "protects litigants from vexatious litigation, conserves judicial resources, promotes efficiency, and minimizes the risk of inconsistent judgments." Panghat v. Baltimore Veterans Affs. Med. Ctr., No. ELH-19-994, 2019 WL 7281952, at *12 (D.Md. Dec. 27, 2019).

For res judicata to apply three requirements must be met: (1) the prior proceeding concluded in a final judgment on the merits; (2) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding; and (3) the parties in the second suit are identical to the parties, or in privity with the parties, in the first suit. See In

re Varat Enters., Inc., 81 F.3d 1310, 1315 (4th Cir. 1996). With respect to the second prong, claims are based on the same cause of action when they "arise out of the same transaction . . . or the same core of operative facts." Nathan v. Takeda Pharms. Am., Inc., 546 F.App'x 176, 178 (4th Cir. 2013).

Yet, res judicata will not operate as a bar when a court expressly reserves the claimant's right to bring the subsequent action or claim. In re Palumbo Family Ltd. P'ship, 182 B.R. 447, 462 (Bankr.E.D.Va. 1995) (citing Restatement (Second) of Judgments § 26(1)(B) (1982); 18 Charles A. Wright, Federal Practice and Procedure § 4413 (1981) ("A judgment that expressly leaves open the opportunity to bring a second action on specified parts of the claim or cause of action that was advanced in the first action should be effective to forestall preclusion."); see, e.g., King v. Provident Life & Acc. Ins. Co., 23 F.3d 926, 928 (5th Cir. 1994) (holding that a second claim was not barred under res judicata when the original judge stated that "plaintiffs, of course, retain the right to file another lawsuit").

Turning first to Campbell I, the Court finds that res judicata does not bar the instant claim under this case because both parties agree that the claims against Dean, Jr. in Campbell I were dismissed without prejudice. (See Correctional Defs.' Mot. at 20; Pl.'s Opp'n at 19). As Campbell correctly notes, "dismissals without prejudice do not bar subsequent suits by res judicata." (Pl.'s Opp'n at 19 (quoting Leftridge v. Matthews, No. ELH-11-3499, 2012 WL 1377060, at *5 (D Md. Apr. 18, 2012))). Correctional Defendants' argument—that this Court should view the dismissal as on the merits because

this Court considered Dean, Jr.'s declaration in rendering its decision—does not disturb this result. (<u>See</u> Correctional Defs.' Mot. at 20).

But even if <u>Campbell I</u> satisfied the first element, a final judgment on the merits, it still fails to support Correctional Defendants' <u>res judicata</u> argument because the claims asserted against Dean, Jr. in the instant matter rely on a separate set of core facts than those addressed in <u>Campbell I</u>. In <u>Campbell I</u>, this Court "did not consider any claim related to custom-fitted AFO's;" rather the claims there "focused on Campbell's 'concerns regarding treatment and pain management for testicular pain and neck pain.'" (Pl.'s Opp'n at 20 (quoting Correctional Defs.' Mot. at 19)). Here, Campbell's claim in Count I centers on the fact that Dean, Jr. denied his ARP requests for custom-fit leg braces, braces which Campbell alleges were medically necessary. (Pl.'s Opp'n at 20; <u>see</u> 2d Am. Compl. ¶ 36, 40). In <u>Nathan v. Takeda Pharms. Am., Inc.</u>, the Fourth Circuit acknowledged that "a new factual development" typically "gives rise to a fresh cause of action." 546 F.App'x at 178 (finding that plaintiff satisfied the cause of action element of <u>res judicata</u> because plaintiff alleged the same facts in both cases). Because the Court finds that Campbell's ARP requests for leg braces constitutes "a new factual development" giving rise to his instant claim, (2d Am. Compl. ¶ 40), Correctional Defendants fail to satisfy the second <u>res judicata</u> element under <u>Campbell I</u>. Consequently, Correctional Defendants may not rely on <u>Campbell I</u> to support their <u>res judicata</u> defense.

As to <u>Campbell II</u>, this case does not support Correctional Defendants' <u>res judicata</u> argument because in resolving that matter, this Court "specifically preserved Campbell's claim regarding his AFOs, creating the instant case." (Pl.'s Opp'n at 21). After this Court

granted summary judgment in <u>Campbell II</u>,[10] finding that the named medical professionals "were not the parties responsible for ordering [Campbell's] new braces," Correctional Defendants note that Campbell, who was then self-represented, filed subsequent correspondence informing the Court of new information regarding his leg braces. (Correctional Defs.' Mot. at 7; <u>see generally</u> <u>Campbell v. Temesgen et al</u>, No. GLR-23-2021, May 17, 2024 Letter, ECF No. 37). On July 12, 2024, this Court issued an Order that Campbell's correspondence be docketed "as the <u>pro se</u> Complaint in the [instant] case." (Correctional Defs.' Mot. at 7; <u>Campbell v. Temesgen et al</u>, No. GLR-23-2021, July 12, 2024 Order at 2, ECF No. 42). In other words, this Court's July 12, 2024 Order in <u>Campbell II</u> "expressly reserved" Campbell's "right to bring a subsequent . . . claim" regarding his braces. <u>In re Palumbo Family Ltd. Partnership</u>, 182 B.R. at 462. Because this Court reserved the issues related to Campbell's leg braces for a subsequent proceeding, the Court finds that <u>res judicata</u> does not prevent Campbell from alleging such issues here.

For similar reasons, the Court finds the doctrine of collateral estoppel inapplicable. Collateral estoppel "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity

---

[10] In <u>Campbell II</u>, this Court considered certain medical providers' liability for allegedly violating Campbell's Eighth Amendment right to medical care by failing to replace his leg straps. <u>Campbell v. Temesgen</u>, No. GLR-23-2021, 2024 WL 3455001, at *8–10 (D.Md. July 12, 2024). This Court granted summary judgment in favor of the providers, finding that the named medical professionals "had no knowledge of Campbell's need for new leg braces or straps, and were not the parties responsible for ordering the new braces or straps." <u>Id.</u> at 10.

to litigate." In re Microsoft Corp. Antitrust Litigation, 355 F.3d 322, 326 (4th Cir.2004) (cleaned up) (quoting Sedlack v. Braswell Servs. Group, Inc., 134 F.3d 219, 224 (4th Cir.1998)). "A difference in pertinent facts, sufficient to substantially change the issues, renders the doctrine of collateral estoppel inapplicable." Folmar v. Harris, 650 F.App'x 818, 821 (4th Cir. 2016) (quoting 18 James W. Moore et al., Moore's Federal Practice § 132.02[2][e] (3d. ed.) (citation modified)).

Here, the Court finds that Campbell alleges a "difference in pertinent facts," such that the issues in his Second Amended Complaint are substantially different from those raised and considered in Campbell I and II. Folmar, 650 F.App'x at 821. Campbell I related only to Campbell's "concerns regarding treatment and pain management for testicular pain and neck pain" and failed to address Campbell's leg braces, (Correctional Defs.' Mot. at 19); and while Campbell II addressed Campbell's AFOs, this Court did not determine issues related to the former warden's conduct, see Campbell v. Temesgen, No. GLR-23-2021, 2024 WL 3455001, at *10 (D.Md. July 12, 2024). Here, however, Campbell seeks to litigate issues regarding "[his] ongoing struggle to obtain [leg braces] to treat his CMT" and Dean, Jr.'s liability. (Pl.'s Opp'n at 23). Specifically, Count I revolves around the ARP complaints Campbell allegedly submitted to Dean, Jr. requesting properly fitting leg braces—requests which Dean, Jr. denied. (2d. Am. Compl. ¶¶ 36, 40). Because Dean, Jr.'s liability with respect to Campbell's claims was never litigated fully on the merits in Campbell I nor Campbell II, and because this Court expressly reserved the issues presented, Correctional Defendants' Motion to Dismiss on collateral estoppel grounds will be denied.

Accordingly, Correctional Defendants' Motion to Dismiss Count I will be granted in part and denied in part. Count I will be dismissed to the extent Campbell seeks damages. Count I shall proceed to the extent Campbell seeks declaratory relief.[11]

> ii.    Count II: Eighth Amendment Right to Medical Care under 42 U.S.C. § 1983 against Healthcare Defendants

Defendant Centurion Group urges this Court to dismiss Count II on the grounds that it is a parent corporation and thus, not a proper party to this case. (Centurion Group's Mem. Supp. Mot. Dismiss, or Alt., Mot. Summ. J. ["Centurion Group's Mot."] at 6–7, ECF No. 57-2). Campbell disputes this assertion, arguing that he seeks to hold Centurion Group directly liable for its policies and practices that contributed to the deprivation of his Eighth Amendment rights. (Pl.'s Opp'n Centurion Group's Mot. at 15–18, ECF No. 60). At this stage, the Court will permit Count II to proceed against Centurion Group.

It is a general principal of corporate law that "a parent corporation is not liable for the acts of its subsidiaries." United States v. Bestfoods, et al., 524 U.S. 51, 61 (1998) (citation modified). But a parent corporation may be directly liable where "the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and

---

[11] Under the Declaratory Judgment Act, in a case or controversy otherwise within its jurisdiction, a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Liberty Mut. Fire Ins. Co. v. Sutton, No. 21-1277, 2022 WL 11112589, at *5 (4th Cir. Oct. 19, 2022) (quoting 28 U.S.C. § 2201). In deciding whether to proceed with a declaratory action, courts "consider whether the judgment would serve a useful clarifying purpose in settling contested legal relations and afford relief from uncertainty and insecurity." Id. Because the Court finds that Campbell has adequately alleged an Eighth Amendment claim under Section 1983 against Dean, Jr. and because Correctional Defendants do not address his request for declaratory relief, the Court will permit Count I to proceed as to declaratory relief.

management" and "the parent is directly a participant in the wrong complained of." Id. at 64-65.

Here, Centurion Group argues that it is an improper party because its subsidiary, Centurion of Maryland, LLC, "is the entity that holds the contract to provide . . . healthcare to individuals incarcerated in Maryland DPSCS." (Centurion Group's Mot. at 6–7). Campbell opposes this argument, explaining that "as the master of his complaint" he seeks to hold Centurion Group directly liable for its "broader corporate policies and procedures." (Pl.'s Opp'n Centurion Group's Mot. at 16–18; 2d Am. Compl. ¶¶ 59–67). Indeed, in his Second Amended Complaint, Campbell contends that Centurion Group "adopted specific policies and procedures designed to grow profits at the expense of rendering adequate health care to inmates, including those at JCI." (2d Am. Compl. ¶ 61). Further, Campbell alleges that, through its corporate polices and customs, Centurion Group was a "direct participant" in the denial of his medical care. See Bestfoods, 524 U.S. at 64–65; (see 2d Am. Compl. ¶¶ 59–67, 79, 82). More importantly, Campbell asserts that he has satisfied both prongs of a Section 1983 Monell claim against Centurion Group. (Pl.'s Opp'n Centurion Group's Mot. at 15; see 2d Am. Compl. ¶¶ 59–67). Centurion Group fails to address this argument, much less defeat it, and the Court declines to make arguments on behalf of a litigant. See Wootten v. Virginia, 168 F.Supp.3d 890, 895-96 (W.D.Va. 2016) ("[C]ourts widely agree that parties have the burden to present legal arguments in the first instance."). Thus, at this stage, the Court finds that the parties' disagreement over Centurion Group's involvement in Campbell's care is a factual dispute that is improper to

resolve at the motion to dismiss stage. Accordingly, Campbell's claim against Centurion Group (Count II) will survive at this stage of the litigation.[12]

        iii.    Count III: Violation of Maryland Declaration of Rights against DPSCS

In Count III, Campbell alleges that DPSCS violated Articles 16 and 25 of the Maryland Declaration of Rights, which prohibit cruel and unusual punishment. (2d Am. Compl. ¶ 86); Md. Const. Declaration of Rights, arts. 16, 25. Correctional Defendants argue that the claims against DPSCS should be dismissed because they are immune under the Maryland Torts Claims Act and the Eleventh Amendment. (Correction Defs.' Mot. at 16–17). At bottom, the Court will dismiss Count III on Eleventh Amendment immunity grounds.

Under the Maryland Tort Claims Act ("MTCA"), a state agency is immune from tort liability[13] unless plaintiff sufficiently alleges that the agency acted with malice or gross negligence. Howe v. Maryland Dep't of Pub. Safety & Corr. Servs., No. GLR-24-1896, 2024 WL 4825782, at *5 (D.Md. Nov. 19, 2024); Andrews v. Maryland Dep't of Pub. Safety & Corr. Servs., No. JMC-23 -00172, 2024 WL 520038, at *9 (D.Md. Feb. 9, 2024). Maryland courts have consistently defined "malice" as "conduct characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." Barbre v. Pope, 935 A.2d 699, 714 (Md. 2007) (cleaned up). Gross negligence is "an

---

[12] As mentioned earlier, Defendant YesCare answered the Second Amended Complaint (ECF No. 41); therefore, Count II shall also proceed against YesCare.

[13] This includes state common law tort claims and violation of state constitutional rights, such as those at issue here. See Francis v. Maryland, No. ELH-21-1365, 2023 WL 2456553, at *23 (D.Md. Mar. 10, 2023).

intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." Id. at 717.

Here, Campbell alleges that DPSCS's agents or employees acted with gross negligence toward his health and wellbeing. (2d Am. Compl. ¶ 90). The Second Amended Complaint contains allegations that DPSCS owed Campbell a duty to ensure he received proper medical care, knew that Campbell was not receiving adequate medical care and treatment, and nonetheless disregarded that knowledge leading to various new injuries, including wounds which have not healed properly, and the exacerbation of existing injuries. (Id. ¶¶ 3–8, 87–92). At this early stage, such allegations are sufficient to raise a plausible inference of gross negligence. See Andrews, 2024 WL 520038, at *10. As such, the Court finds that the MTCA does not bar Campbell's claims against DPSCS. See id. (finding MTCA did not bar plaintiffs' declaration of rights claims against DPSCS and other defendants because plaintiffs plausibly alleged gross negligence in the provision of medical care).

Although the MTCA does not immunize DPSCS from Campbell's claim in Count III, the Eleventh Amendment does. Absent a waiver or valid congressional abrogation of sovereign immunity, the Eleventh Amendment bars suits against an instrumentality of the State, such as DPSCS. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). "The DPSCS is an arm of the state." Haughie v. Wexford Health Sources,

31

Inc., No. ELH-18-3963, 2019 WL 6467859, at *2 (D.Md. Dec. 2, 2019) (citing Md. Code (2017 Repl. Vol.) §§ 2-101, 3-201 of the Correctional Services Article). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, see Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Allen v. Tunecore, No. SAG-23-999, 2023 WL 3025315, at *3 (D.Md. Apr. 20, 2023). "A State's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued." Pennhurst, 465 U.S. at 99. Accordingly, the Court finds that Campbell's claim against DPSCS, a State agency, is barred under the Eleventh Amendment. See Haughie v. Wexford Health Sources, Inc., No. ELH-18-3963, 2019 WL 6467859, at *2 (D.Md. Dec. 2, 2019) (finding Eleventh Amendment barred plaintiff's Maryland Declaration of Rights claim and federal law claims against DPSCS).

The Court is unpersuaded by Campbell's arguments to the contrary. Campbell does not dispute that DPSCS is entitled to Eleventh Amendment immunity; rather, he argues that Correctional Defendants did not properly raise this defense because they moved to dismiss under Rule 12(b)(6) instead of moving to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). (Pl.'s Opp'n at 16–17); see Fed.R.Civ.P. 12(b)(1),(6). As Correctional Defendants indicate, the Fourth Circuit has not definitively ruled on whether Eleventh Amendment immunity can be raised on a Rule 12(b)(6) motion to dismiss for failure to state a claim. See Andrews v. Daw, 201 F.3d 521, 524 n.2 (4th Cir. 2000) ("Our cases have been unclear" on this issue); see, e.g., Hutto v. S.C. Ret. Sys., 773 F.3d 536, 545 (4th Cir. 2014) ("[W]e have often affirmed Rule 12(b)(6) motions to dismiss on the

basis of Eleventh Amendment immunity."). Thus, the Court does not find this issue dispositive and will grant Correctional Defendants' Motion to dismiss Count III against DPSCS.

## III.    CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Correctional Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 55), which the Court construes as a Motion to Dismiss. Correctional Defendants' Motion to Dismiss will be granted in part and denied in part as to Count I and granted as to Count III. Further, the Court will deny Centurion Group's Motion to Dismiss as Improper Party or, in the Alternative, Motion for Summary Judgment (ECF No. 57). Dean, Jr. and Centurion Group shall answer the remaining claims of Campbell's Second Amended Complaint as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. The Court will also deny as moot Campbell's Motions to Strike (ECF Nos. 61, 63, 85). A separate Order follows.

Entered this 25th day of November, 2025.


_____/s/_____
George L. Russell, III
Chief United States District Judge